AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

A black LG cell phone with gold trim and a black and clear protective case, currently in MPD evidence under Inventory #18033953, item #1.

Case No. 18-912 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act robbery), and Title 18, United States Code, Sections 924(c) and 2 (use of a firearm during a crime of violence).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent David Kowalski
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: September 10, 2018

*Judge's signature*

City and State: Milwaukee, Wisconsin          Honorable Nancy Joseph, U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Kowalski, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1. I am a Special Agent with the Federal Bureau of Investigation and have been so employed since April 2009. Since August 2018, I have been assigned to the Milwaukee FBI Violent Crime Task Force. I have participated in numerous complex narcotics, money laundering, violent crime, armed bank robbery, and armed commercial robbery investigations in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and other related offenses. I have employed a wide variety of investigative techniques in these and other investigations, including but not limited to, the use of informants, wiretaps, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same.

2. I have conducted and/or assisted with investigations of violent crime and narcotics violations in conjunction with agents and officers from other jurisdictions, and have received training from these agents and officers in conducting these investigations. I have also conducted and/or assisted with investigations that have led to the arrest of persons for violations of law dealing with commercial robberies.

3. This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, official records, citizen witnesses' statements, consent searches, recorded statements, law enforcement surveillance, surveillance video, social media, court records,

telephone records, and public records which I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

4. Based on the investigation to date, I submit that there is probable cause to believe that Nickie M. Foster (DOB XX/XX/1995), Marquel L. Johnson (DOB XX/XX/1994), and Martell D. Ford (DOB XX/XX/1990) conspired to commit and committed a series of armed robberies and attempted armed robberies in Milwaukee, Wisconsin, between August 22, 2018, and August 25, 2018, in violation of Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act robbery), and 924(c) and 2 (use, brandishing, and discharge of a firearm during a crime of violence).

5. This affidavit is submitted in support of an application for a search warrant for the following portable electronic device ("Device"), which is currently in evidence at the Milwaukee Police Department ("MPD"), for evidence of the user's possible involvement in one or more of the armed robberies described in detail below:

    a. A black LG cell phone with gold trim and a black and clear protective case, currently in MPD evidence under Inventory #18033953, item #1.

6. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts I believe are pertinent to establishing the necessary foundation for the warrant.

## II. PROBABLE CAUSE

7. I am involved in the investigation of a series of armed robberies of taxi cab drivers and gas station employees in the Milwaukee area between at least August 22, 2018 and August 25, 2018. The taxi cab companies and gas stations included in this affidavit are businesses involved in interstate commerce, and the below-described robberies affected interstate commerce.

**Armed Robbery of Taxi Cab Driver –August 22, 2018 (12:49 p.m.)**

8. In the early afternoon on August 22, 2018, an individual using telephone number 414-242-3325, contacted United Blue Taxi and requested a pickup for an individual by the name of, "Scoobby [sic]" at 1014 S. 4th Street, Milwaukee, Wisconsin. Shortly thereafter, A.S., a taxi cab driver for United Blue Taxi, arrived at this address. At approximately 12:49 p.m., a black female (Subject #1) entered the rear passenger seat of A.S.'s cab and requested to be taken to the area of S. 14th and W. Washington Streets in Milwaukee, Wisconsin. Upon arriving at this destination, A.S. requested payment for the fare. Subject #1 then produced a silver semi-automatic handgun and pointed it at A.S.'s face and temple while demanding money from A.S. Subject #1 then told A.S., "You have two minutes, give me the stuff!" A.S. gave Subject #1 his wallet. Subject #1 then exited A.S.'s vehicle and entered a tan sedan, which was driven by another individual. As Subject #1 was exiting A.S.'s vehicle, Subject #1 dropped a black wallet containing a State of Wisconsin Identification card bearing the name Nickie M. Foster (Foster), with date of birth XX/XX/1995. The wallet also contained a Wisconsin Quest card and a Forward Health Insurance card, both bearing Foster's name. Several debit cards with names other than Foster's were also located within the wallet.

9. When interviewed by responding officers, A.S. stated that he believed he was robbed by a black male; however, a review of the video recording device inside A.S.'s United Blue Taxi cab from the time of this incident shows Suspect #1's physical appearance to be consistent with the photographs of Foster maintained in various law enforcement/government databases. A.S. also stated that the handgun brandished during the robbery was black or brown; however, it is clear in the surveillance footage that the handgun was silver in color.

**Armed Robbery of Taxi Cab Driver – August 22, 2018 (6:09 p.m.)**

10. In the early evening on August 22, 2018, an individual using telephone number

3

414-242-3325 contacted American United, a Milwaukee, Wisconsin-based taxi company, and requested a pickup for an individual by the name of, "Scooby" at 715 S. 34th Street, Milwaukee, Wisconsin. Shortly thereafter, R.M., a taxi cab driver for American United, arrived at this address. At approximately 6:09 p.m., a subject entered the rear passenger seat of R.M.'s cab and directed him to start driving. After driving a few car lengths, the subject produced a silver handgun and ordered R.M. to pull over and throw his keys out of the window. R.M. complied and was then ordered to look away and turn over his property. R.M. gave the subject his cellular telephone and his wallet, which included his identification, approximately $570, and his debit card. The subject then exited R.M.'s vehicle and got into a bronze or orange car with rear end damage, which was parked nearby, and drove away.

11. When interviewed by responding officers, R.M. stated that he was unsure if he was robbed by a black male or female. A review of the video recording device inside R.M.'s American United cab from the time of this incident does not provide a clear view of the subject's face; however, the clothing worn by the subject, the style of the subject's hair, and the handgun brandished are consistent with Foster's appearance in the earlier United Blue Taxi robbery.

### Armed Robbery of Taxi Cab Driver – August 22, 2018 (9:38 p.m.)

12. In the late evening on August 22, 2018, a female caller contacted M.B., a taxi cab driver for American United, on M.B.'s work phone, and asked to be picked up at 1515 S. 5th Street, Milwaukee, Wisconsin. M.B. agreed and drove to the location, arriving at approximately 9:38 p.m. Upon arrival, M.B. encountered his black female passenger (Subject #1) standing on the side of the road. Subject #1 asked M.B. if she could sit in the front, but he directed her to sit in the back. Subject #1 entered the rear passenger seat and immediately produced a silver handgun. Subject #1 told M.B. not to turn around and threatened to shoot him if he did. Subject #1 demanded M.B.'s money and M.B. complied. While M.B. was giving his money to Subject #1, a black male

4

(Subject #2) entered the front passenger door and began searching M.B.'s person for additional valuables. Subject #2 took M.B.'s cellular telephone and Subject #1 and Subject #2 took cash from M.B. At some time during the robbery, Subject #1 struck M.B. in the head with the pistol. Subject #1 and Subject #2 then exited M.B.'s vehicle and got into a tan Pontiac sedan.

13. I have compared the surveillance footage with a known photo of Martell Ford. Subject #2's face and physical characteristics appear consistent in all respects with Ford.

14. A review of the video recording device inside M.B.'s American United cab from the time of this incident show's Subject #1 wearing similar clothing and carrying the same handgun used by the female subject, identified as Foster, in the two previous robberies. This video also shows a distinctive tattoo on Subject #1's right upper arm.

### Attempted Armed Robbery Outside of Petro Mart – August 22, 2018 (10:30 p.m.)

15. At approximately 10:30 p.m. on August 22, 2018, while walking to the Petro Mart gas station located at 2341 S. Chase Avenue, Milwaukee, Wisconsin, A.G. was confronted by a black female (Suspect #3) wearing a grey sweatshirt with a hood over her head. Suspect #3 produced a handgun, which she pointed at A.G.'s face, and demanded money. A.G. stated he did not have any money, at which point Suspect #3 pulled the trigger of the gun twice but it did not fire. A.G. attempted to wrestle the gun away from Suspect #3 and both individuals fell to the ground. While on the ground, a black male exited a tan sedan and began coming towards A.G. and Suspect #3. A.G. then pushed Suspect #3 and fled into the store. When A.G. and the Petro Mart attendant looked outside a short while later, Suspect #3 and the black male were gone.

### Armed Robbery of Taxi Cab Driver – August 23, 2018 (1:30 a.m.)

16. At approximately 1:14 a.m. on August 23, 2018, an individual using telephone number 414-242-3325 contacted All-City Veterans Taxi and requested a pickup for an individual by the name of "Unique" at 4200 N. Holston Street, Milwaukee, Wisconsin. Shortly thereafter,

5

J.M., a taxi cab driver for All-City Veterans Taxi, received an order on his in-board computer to complete the pickup, which he accepted at approximately 1:05 a.m. At approximately 1:28 a.m., J.M. arrived at the address, which was a daycare facility that appeared closed. After waiting for about five minutes, J.M. was approached by a black female, who J.M. to be in her late teens, between 5'0" and 5'2" tall, weighing approximately 120 pounds, and wearing an orange hooded sweatshirt and tan shorts. The woman, who identified herself as, "Tony Unique," (Unique) entered J.M.'s cab and requested to go to the intersection of 6th and Chambers Streets in Milwaukee, Wisconsin. Upon nearing the destination, Unique asked to be dropped off in the alley between 6th and 7th Street on Chamber Street. J.M. told her that he would not drop her off in the alley and parked in front of 618 W. Chambers Street. As J.M. was waiting to be paid his fare, Unique produced a silver handgun, put the gun to J.M.'s head, and then ordered him to put his head on the steering wheel. Unique then told J.M., "I'll kill you on the spot" and demanded his wallet and cellular telephone. Unique hit J.M. in the back of the head with the handgun and then directed him to turn off the car and throw the keys out the window. J.M. did as he was instructed and then gave Unique his cellular telephone and his wallet with approximately $30 in cash, several debit cards, and his identification card.

17. After receiving the property, Unique told J.M. not to turn around for five minutes and then exited the vehicle. Shortly thereafter, J.M. exited the vehicle to get his keys. When he did, he observed Unique standing at the entrance to the nearby alley with the gun in her hand. Unique then pointed the gun at him and fired one shot, which J.M. stated sounded like it was a low caliber round because it was not very loud. After firing the shot, Unique ran north through the alley. J.M. grabbed his keys and immediately drove to the local police station to report the incident.

18. Upon receiving this report, law enforcement officers travelled to the area near 618

6

W. Chambers Street and attempted to locate a shell casing that evening, but were unable to do so due to the poor lighting conditions. Officers returned to the scene on the morning of August 23, 2018, and located one .22 caliber shell casing in the area near where J.M. stated Unique was standing.

**Petro Mart Gas Station Armed Robbery – August 23, 2018 (2:30 a.m.)**

19. At approximately 2:30 a.m. on August 23, 2018, two female subjects entered the Petro Mart gas station located at 2341 S. Chase Avenue, Milwaukee, Wisconsin. The first subject (Subject #1) was wearing the same cut-off tan shorts from the taxi cab robberies in the preceding 24 hours and was wearing blue gym shoes. Subject #1's physical features were in all respects consistent with Foster. The other subject (Subject #3) was wearing a grey hooded sweatshirt with the hood up, similar to the one described by A.G. in the attempted robbery at the same Petro Mart just a few hours earlier, as described above. As Subject #3 entered the gas station, Subject #3 removed a bottle of automotive fluid from a store shelf and used it to prop open the front door to the store. Based on my training and experience, I know that individuals who plan to commit robberies of commercial stores frequently try to defeat the remote controlled magnetic locks on stores by propping the door open or by having a co-actor hold it open.

20. Subject #1 then approached the store attendant, M.B., produced a silver handgun, and shot M.B. in the head. After shooting him, Subject #1 stepped over M.B., who had fallen to the ground, and walked to the cash register, which was in a glass-enclosed area. Subject #1 opened the register and took the cash contained within. As she collected the money, Subject #1 passed the silver handgun through an opening in the cash register area to Subject #3, who took possession of the weapon and subsequently pointed it at M.B., who was still on the ground. At approximately 2:30 a.m., Subject #1 and Suspect #3 exited the store. M.B. survived the shooting, but requires ongoing medical care and continues to endure significant cognitive impairments from the shooting.

7

The bullet remains in M.B.'s head and cannot be surgically removed.

21. The surveillance footage showed the activity described above. One camera view showed Subject #1 holding the silver pistol in her outstretched right hand. In the footage, the outlines of two tattoos are visible on Subject #1's right arm. Two consistent tattoos are visible on Subject #1's right arm in the footage for the robbery of taxi cab driver M.B. on August 22, 2018, at approximately 9:38 p.m., just a few hours before the Petro Mart robbery. In addition, the Petro Mart surveillance footage shows that Subject #1 was wearing cut-off shorts. Subject #1's shorts appear consistent with Subject #1's shorts from the surveillance footage of the robbery of taxi cab driver R.M. on August 22, 2018, at 6:09 p.m.

**Recovery of Suspect Vehicle – August 23, 2018 (5:59 p.m.)**

22. On August 23, 2018, at approximately 5:59 p.m., law enforcement officers located a 2000 Pontiac Grand Am, gold in color, bearing Wisconsin license plate: 549-TAH, with VIN: 1G2NF52T6YM864942, which matched the description of the subject vehicle used in several of the aforementioned rohberies. The vehicle, which had all of the windows broken out, was parked on the road near 2268 S. 17th Street, approximately one mile from the Petro Mart described above. During a search of the vehicle, law enforcement officers recovered a number of items, including the following:

   a. a Wisconsin Driver's License bearing the name of A.S., one of the taxi cab robbery victims;

   b. a Wisconsin Driver's License bearing the name of M.B., one of the taxi cab robbery victims;

   c. a City of Milwaukee Driver's License bearing the name R.M., one of the taxi cab robbery victims; and

   d. blue Nike shoes consistent with those worn by Subject #1 (Foster) during the Petro

Mart robbery that had occurred less than 16 hours earlier.

23. While searching the vehicle, officers also recovered two cards listed to Marquel Johnson (Johnson): a Wisconsin Quest card and a Potawatomi Fire Keeper's Card. In addition, officers recovered a prescription inhaler for Johnson that was filled at Walgreens pharmacy at 2410 West Forest Home Avenue on the south side of Milwaukee. Subsequent queries of various law enforcement databases produced several photographs of Johnson matching the physical description of Subject #3 in the robberies above. Law enforcement also queried Facebook.com for the name, "Marquel Johnson," which returned the account: https://www.facebook.com/marquel.johnson.3956. The Facebook User ID associated with this account is: 100013929930536. A review of the publicly viewable postings associated with this account revealed multiple pictures matching the physical description of Subject #3 in the robbery outside Petro Mart and robbery of Petro Mart on August 22 and August 23, respectively, as well as the known photographs of Johnson, which were previously located in the various law enforcement databases.

24. The following photograph was observed on Johnson's Facebook account with a post date of August 19, 2018:



Based on my training and experience, I know the term "22" in the above photograph is a reference to .22 caliber, which is the same size ammunition recovered from the robbery of taxi-cab driver J.M. in the early morning hours of August 23, 2018. The handgun in this photograph is consistent with the silver handgun used in each of the above-described robberies, including the one that Subject #1 used to shoot the Petro Mart gas station employee in the head.

**BP Gas Station Robbery – August 25, 2018 (3:43 a.m.)**

25. At approximately 3:43 a.m. on August 25, 2018, a female suspect (Subject #3) and a male suspect (Subject #2) exited a newer, dark-colored Chevrolet Malibu, which was parked on W. Buffalo Street and walked into the BP Welcome Mart located at 350 N. Plankinton Avenue, Milwaukee, Wisconsin. Shortly thereafter, Subject #2 moved to the entry door and propped it open. At approximately the same time, Subject #3 who had moved to the cashier's counter,

10

produced a silver handgun, and demanded money from the cashier, who was located behind ballistic-proof glass. The cashier refused to comply and when Suspect #2 exited the gas station and let the entry door close, the cashier activated the door lock, locking Subject #3 inside. Upon observing this, Suspect #2 attempted to open the door from the outside, and when he could not, he returned to the Chevrolet Malibu and drove away. The surveillance footage showed a distinct mud pattern on the passenger side of the dark-color Malibu.

26. At multiple points during the surveillance footage, the female suspect's face is visible and I can identify the female suspect as Johnson. In addition, the female suspect is wearing what appears to be the same Nike flip-flops as those worn by Subject #3 in the Petro Mart robbery. The male suspect's face is also visible at certain points in the footage, and he appears consistent with Martell Ford.

27. Johnson, who remained inside the gas station, continued to threaten the cashier while attempting to open the door. Johnson eventually located another exit door which she was able to open, and fled the scene. Neither Johnson nor Subject #3 obtained any property during this attempted robbery.

28. Later in the day on August 25, 2018, law enforcement officers observed Johnson driving a blue Chevrolet Malibu, bearing Illinois license plate: E62-3921, with vehicle identification number (VIN): 1G1ZC5E10BF370094, which had a distinct mud pattern on the passenger side, consistent with the vehicle observed during the BP Gas Station robbery earlier that day. When officers attempted to conduct a traffic stop, Johnson fled the scene and a high-speed pursuit was initiated. While attempting to evade law enforcement, Johnson struck two bystander vehicles, ultimately disabling her vehicle as a result of her collision with the second vehicle. Johnson was taken into custody and subsequently transported to a medical facility for treatment of injuries sustained during the crash. During the search of Johnson's person incident to arrest,

officers recovered a loaded silver .22 caliber handgun from Johnson's pocket. The firearm is consistent in all respects to the firearm in Johnson's Facebook post from August 19, 2018, and the firearm brandished and discharged during the robberies. One unique feature of the firearm was black duct tape on the handle area, which is visible in some of the taxi cab surveillance footage from the robberies.

29. On or about August 20, 2018, a blue Chevrolet Malibu, bearing Illinois license plate: E62-3921, with vehicle identification number (VIN): 1G1ZC5E10BF370094, was reported stolen from O'Hare Airport in Chicago, IL. A review of Johnson's Facebook records shows a wall post on August 19, 2018, at 7:41 p.m. that reads, "In the city Chicago bound." Then, on August 20, 2018, at 6:45 p.m., a selfie-style photograph of Johnson was posted to the Facebook page with the post "Came to the city to slap . . . one more night an on my way back to mil (with emoticons)." In the photo, Johnson appears to be in a public restroom and has a stack of U.S. currency under her chin.

30. The stolen Chevrolet Malibu was searched after Johnson's arrest. From the front driver's side floor board, officers recovered a silver iPhone with a cracked screen. Officers observed what appeared to be blood on the cell phone. The phone is currently in evidence under Inventory 18032155, Item #2.

31. On August 23, 2018, at 3:35 a.m., just over an hour after the Petro Mart robbery in which the gas station employee was shot in the head, the following post was added to Johnson's Facebook page:

12



32. In addition, Marquel Johnson's Facebook page shows a photo posted on August 24, 2018, at 12:17 a.m., in which she is in what appears to be a hospital with a breathing apparatus, such as a nebulizer, attached to her face. The post reads, "asthma (with various emoticons)."

33. After receiving medical treatment following her arrest on August 25, 2018, Johnson was interviewed by law enforcement while in the hospital. During this interview, Johnson acknowledged her role in at least two of the robberies detailed above: the robbery of Petro Mart; and the BP gas station robbery. Johnson stated Martell Ford was the male suspect in the robberies.

13

Johnson stated she was with Nickie Foster and Martell Ford at the Petro Mart robbery. Johnson stated Foster had the gun and shot the clerk, then handed the gun to Johnson while Foster gathered the money. Johnson stated that on August 25, 2018, she and Ford entered the BP gas station on N. Plankinton. Johnson admitted to having the gun. Johnson also confirmed Foster's involvement in the taxi-cab robbery of M.B.

34. Queries of various law enforcement databases revealed photographs of Ford consistent with the surveillance photos obtained during the relevant robberies involving Subject #2.

35. On September 3, 2018, law enforcement officers conducted a custodial interview of Foster following her arrest. During that interview, Foster, after waiving her Miranda rights, acknowledged her involvement in the four taxi cab robberies, detailed above, which took place on August 22 and 23, 2018. Foster stated that Johnson drove her to and picked her up from each of these robberies. Foster was shown a prior booking photo of Ford and subsequently identified him as the male subject involved in the taxi-car robbery of M.B. According to Foster, Ford was involved in a total of two or three of the taxi cab robberies.

36. During her interview, Foster also acknowledged her involvement in the Petro Mart robbery, which according to Foster, was Johnson's idea. Specifically, Foster recalled Johnson giving Foster the .22 caliber pistol and directing her to point it at the clerk. While Foster was doing this, Johnson locked the door to the store as Ford waited outside in the vehicle. Foster knew the clerk was shot, but she was not sure how it happened because her finger was not on the trigger when she pointed it at him. After collecting the money, Foster, Johnson, and Ford all left the scene together. Foster was shown a photo of the handgun recovered from Johnson at the time of her arrest and confirmed it was the same one used in each of the robberies.

14

37. On September 6, 2018, Martell Ford was arrested in Milwaukee. On Ford's person, officers recovered a black LG cell phone with gold trim and a black and clear protective case, currently in evidence at the Milwaukee Police Department under Inventory #18033953, item #1.

## III. TECHNICAL TERMS

38. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

15

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

40. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine

16

devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.   CONCLUSION

43.   Based on the facts contained within this affidavit, I believe that probable cause exists to search the Device, which is more particularly described in Attachment A, and which is currently located in evidence at the Milwaukee Police Department, for evidence of the aforementioned armed rohberies, including but not limited to the information contained in Attachment B.

17

## ATTACHMENT A

The following property is to be searched:

a. A black LG cell phone with gold trim and a black and clear protective case, currently in MPD evidence under Inventory #18033953, item #1.

The Device is currently in evidence at the Milwaukee Police Department.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 1951(a) (Hobbs Act robbery); and Title 18, United States Code, Section 924(c) (Use of Firearm during Crime of Violence) involving Marquel Johnson, Nickie Foster, Martell Ford, or any other subject, which was in active memory of the Device as of September 6, 2018, to include:

   a. any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

   b. any information recording any targets' schedule or travel in August 2018;

   c. any web search information related to the offenses described above;

   d. photographs of locations evidencing pre-robbery surveillance or vehicles or people related to the offenses described above;

   e. any information related to the proceeds from the robberies described above;

   f. any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

   g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.